v. James LeBlanc 21-30446. You don't know if everybody's settled in yet or not. Looks like we are. You may proceed. Good morning. May it please the Court. Morgan Broomgard on behalf of James LeBlanc, Secretary of the Louisiana Department of Corrections. Problems at the Department of Corrections have been well documented. But this case does not implicate... Do you know offhand how many of these cases there are against LeBlanc or subordinates dealing with release times? There's roughly seven that have been cited by this Court or pending before this Court. What about this Court? This Court. But how about in district court? I'm not aware of a total number. Considering all that's going on, I was wondering just how numerous this was. Proceed. Thank you very much. Whatever those problems are, this case doesn't implicate the same problems. Taking as true the facts in the complaint, this is the only honest mistake case where an inmate's past criminal history led him reasonably to be misclassified as a sex offender and required to comply with residency requirements before he could be released from prison. That distinction prevents Mr. Parker from being able to satisfy his burden of showing two things. First, that Secretary LeBlanc's actions caused Mr. Parker's over-detention. And second, that existing case law was so clear that every reasonable officer in Secretary LeBlanc's shoes would have known that his actions were objectively unreasonable. I'll address those points in that order. But before I do, I'd like to clarify one threshold matter, Mr. Parker's theory of Section 1983 liability for money damages against Secretary LeBlanc. Our opening brief explains that Mr. Parker's theory has been difficult to pin down throughout these proceedings. In response, Mr. Parker's brief on page 5 clarifies that his only theory against Secretary LeBlanc for money damages is a failure to train slash supervise claim. And that's quoted. That statement narrows his claims not only for this appeal, but also in the proceedings going forward after this appeal. And we would ask that any opinion from this court make that clear. Moving to my first substantive point, causation. Secretary LeBlanc's alleged failure to train or supervise did not cause Mr. Parker's over-detention. And to satisfy causation, Mr. Parker must show two things. A pattern of very similar incidents that put the Secretary on notice that a particular omission in training or supervision caused employees to over-detain inmates. And also that the Secretary did nothing to fix that omission. The district court found that there was a pattern of prior over-detentions caused by not knowing proper release dates, or by over-calculating sentences and then later discovering the proper release date had already come and gone. A pattern of miscalculated release dates could not, as a matter of law, put the Secretary on notice that employees were misclassifying inmates as sex offenders. And we know that because of Connick and cases from this court as well. Connick says it is not enough for violations to fall into the same general category. There they were Brady violations. The cause, Connick required that the cause behind each over-detention must be similar, or in that case, each Brady violation must be similar. For example, it wasn't enough in Connick that all the violations were Brady violations. The court could have decided that the DA's general Brady training had failed. But instead, the Connick court looked behind the general category of violation to require similarity in the type of exculpatory evidence that was withheld. Because none of the previous incidents, the previous Brady violations in Connick, involved failure to disclose DNA evidence, those violations could not have put the DA on notice that specific training was necessary to avoid DNA type Brady violations. Without that level of similarity, Connick held that the DA could not have been on notice that his office's Brady training was inadequate with respect to that sort of DNA Brady violation. Similarly, in Jason v. Turner, it wasn't enough to have four cleaning tool incidents. The court said that those didn't create a pattern of violation that should have put the prison on notice for a sling blade incident. Like in Connick, Jason, and the other cases cited in our briefs, the department's pattern of release date miscalculations could not have put Secretary LeBlanc on notice that the department's training or supervision was inadequate with respect to mistakenly classifying inmates as sex offenders. Under Connick and Jason and the other cases cited, the problems acknowledged in dicta in the Hicks unpublished opinion also are insufficient to put the Secretary on notice. Even if there's some semantic overlap between the release date miscalculation errors in Hicks, those errors were what led to release date miscalculations, not over-detentions generally. And under Connick and Jason, miscalculating a release date is not sufficiently similar to misidentifying a category of offense, like a sex offense, and therefore could not have put Secretary LeBlanc on notice that there was a failure in how employees were trained or supervised in classifying offenses. Well, Counselor, you're raising a very valid point about the intersection between our laws, such as Connick and whatever, talking about the specificity necessary of the constitutional violation facts and the constitutional violation itself. Here, I think primarily the argument by the plaintiffs is it's a clear constitutional violation to keep somebody in prison beyond the time in which they have, through due process, been declared subject to the state's control. That's a separate step in our analysis. It does seem to me that Abel colleagues' opinion in Crittenden says that LeBlanc, the evidence in that case was such that LeBlanc was on notice. We're just at the motion-to-dismiss stage, and so what actually has happened is for the next stage, if it gets there, LeBlanc was on notice that there's an array of problems in setting completion dates for sentences in Louisiana. He may not know what all the problems are, but he knows there's a raft of problems. He may not know this particular—one way to respond or to interpret Crittenden is that he may not know this particular error is made, but he knows there are errors across an array of circumstances. I'm just not sure—help me with that. Connick is—I forget what the vote in Connick was. It was a closely divided case, in fact. But it's maybe your best case for saying more was necessary here, but I'm just wondering if where we are in what your client's knowledge is of the problems that may be quite widespread in the computation of sentences in Louisiana was such that he had to do something, and it's up to you to prove in the next stage of this case, if it gets there, what that something was. What's your response? Here there isn't any problem with his release date. Everybody agrees that the release date was known. The problem was that he got classified as a sex offender and then had additional residency requirements placed on him that needed to be satisfied before he could be released. So even assuming—I mean, even assuming that the secretary had done something to address the miscalculation problems and the ways that the employees understood their job of calculating release dates, that wouldn't have fixed this problem. How long did you over-detain him? 364 days or something? 337, I believe. So it's a technical error, but nearly a year in prison before anybody woke up to it. Is that the fact? I would say two things. First, the over-detention in Porter was a year and three months, 15 months, and qualified immunity was still granted. Also, he did not raise the issue—all of the prison grievance procedures were available. And in all of the ARPS that he submitted, he never said, I'm not a sex offender. I shouldn't be here. His qualms were with the addresses that he had submitted, and he felt like nobody was looking at the addresses that he had submitted to satisfy the requirements that were being imposed on him. And according to his complaint, he had been told that he was being held because he had been classified as a sex offender. So at any time he could have submitted an ARP contesting that fact, and he didn't. So we need similarity, but you would agree we don't need exact duplication, correct? Why wouldn't—going to Judge Southwick's question—why wouldn't the pattern, this widespread, as he called it, pervasive pattern of over-detention, why wouldn't that pattern be enough to put the secretary on notice, hey, you need to implement policies to broadly ensure that people's constitutional rights are not violated, that they're not serving beyond their release date? I would say that's not—two answers to that question. First, that's not the legal standard under Condon, under Jason, and the cases that we cite. It has to be similar enough, and the reason why is my second answer. As a practical reason, fixing—the fixes that would have been required for the other problems that have been acknowledged by this Court wouldn't have prevented this. And so if Secretary LeBlanc had responded to those questions, to those problems, that wouldn't have fixed this. Let me ask you, what we're talking about is a factual matter. Was he a sex offender? In another case we may hear shortly, the question is how to apply the amount of time that was served in another state, how to apply good time credits. All of that is how to use the necessary information, first obtain it, make sure it's accurate, and then apply it to the sentence. I would say all these cases have at least that similarity, and where the error in acquiring information arises may differ, but it's still a matter of what is relevant to setting the release date for this sentence, and if you're going to use something you say is relevant, what sort of protocols ought to be followed to make sure that information is accurate. So where have I gone afield? Many places, so you say three ways, whatever you want to say. I would point the Court to Mr. Parker's briefing in the District Court at ROA 289, and there Mr. Parker argued against, and I'll quote, lumping this case in with the number of other overdetention cases pending before the DOC that are a result of time computation mistakes on the part of DOC. Time computation mistakes that lead to overdetention generally involve different issues, such as delay in paperwork getting from the DOC to the local prison. However, the facts of this case are unique, and he goes on. There was no miscalculation, and Mr. Parker's case cannot be lumped in with the others that DOC is currently dealing with. Unlike those cases, Mr. Parker's release date was properly calculated and stated on all prison forms. In this case, Mr. Parker and the defendants were all aware of the proper release date. So it seems to me that as a matter of law, this case is different. This is an honest mistake case, and we know in Porter that one single mistake Let's talk a little bit about the effect of the sex offender categorization. As I understood it, the sex offender categorization then triggered a second obligation to provide an address of some sort of where they were exiting. Is that correct? It's not just a categorization. You don't release a person who is serving a sentence as a sex offender until you have an address for where they're going, something of the sort. I'm not clear about that. What is that? When an inmate has committed a sex offense, there are additional residency requirements, and the residence needs to be verified. Why is the categorization of sex offender, why does that end his release date? You just keep filing it because he's a sex offender and keep holding him. I would say because under state law, there are certain requirements about where sex offenders can and cannot live with relation to proximity to schools, etc. As I understood it, it was a requirement that he have an address of some sort, they know where he's going to go. Right. Correct. It's not just his categorization. The categorization triggers a second obligation for a release date. How does the prisoner, how does he know or how does he provide that information to you? He provided it according to his complaint, which we take as true. He gave them addresses. In fact, in his ARP, he said, I've provided two addresses. I haven't heard back on them. Can you please follow up? When did he do that? While he was incarcerated. I don't understand that. When of the 364 days did he do that? There were two ARPs that were submitted before his release date had come and gone. And I believe that his follow-up ARP about the addresses was submitted after his release date had passed. I understand that. But when? How long did you keep him after he gave you the information that it was required to release him? Until the honest mistake was discovered. I'm not talking about the characterization of the honest. I'm saying it's a factual question. I'm sorry. He served 365 days or so that he shouldn't have. But you say, well, but the reason for that was a sex offender. Well, the sex offender requirement is simply that he have an address of where he's going. And my question is, he did give you addresses, two addresses. Now, how long did he serve after he complied with that? I don't know the answer to that exact question. Well, that would go back to the pattern of what he had. The question is, why wouldn't you know that? He gave you what he did. Your implications, your argument earlier, as I understood it, was the prisoner could have corrected this. He didn't say anything. But now he did say something. He did comply with the law. And then it was ignored. Now, that comes back to the pattern. That is the pattern of simply ignoring those. And the people who lost qualified immunity were the people who knew and did not act for some period of time, a much shorter period of time than this. I see that I'm out of time. May I answer? Well, I was saying earlier, maybe you weren't here yet, when you're being asked a question, go ahead and answer it. In two sentences, I would say that even assuming the Secretary was on notice, there is no clearly established law that what he did was deliberately indifferent. Thank you. Good morning, Your Honors. May it please the Court. I'd just like to briefly go through a few of the allegations in the complaint, which I think will get to several of Judge Higginbotham's questions. So Appellant has framed this case as about a single mistake, which was the labeling of Mr. Parker as a sex offender. But this case is about a sequence of mistakes. First, he was initially mistakenly labeled as a sex offender. Then a month before these 339 days started to run, he knew that something was up with his release date. He didn't know that it was because he had been labeled a sex offender, because, number one, he's not a sex offender, and number two, being a sex offender in the Louisiana Department of Corrections has a number of consequences, and he never faced any of those other consequences. He had only been labeled a sex offender in this one particular way, in this one document, that he had no awareness of. So a month before his release, he submitted an ARP to the prison that said, I need to talk to the warden, there's something up with my release date. He sent another ARP that said, I need to talk to another administrator, there's something up with my release date. The response to that initial ARP was, we are trying to get somebody to call us back to look into this. And just as a background fact here, whether, as an atmospheric fact perhaps, whether somebody is a sex offender is publicly available information on the Sex Offender Registry. Any of us in this room right now could pull out our phones and in 90 seconds discover that Mr. Parker was not a sex offender. He first notified them of some issue with his release date a month before this 339 days even started to run. Then— Let me ask, are you telling us what's in your complaint? Yes, Your Honor. Expanding on that. Much of this is— To the complaint. Yes, this is—yes, Your Honor, this is in the complaint. My understanding of what's in the complaint is he says he alleged that he disputed that he was a sex offender, but I did not notice any date on that. Are you saying the complaint sets out that fairly early in this overstay in government housing, he did inform he was not a sex offender? It's unclear. As soon as he learned that he had been labeled a sex offender, he disputed that he was a sex offender. However, that seemed to have happened fairly later on. I understand that that particular allegation is vague. I will note that the ARPs I'm referencing are attached as exhibits. I'm sorry. The ARPs are attached as Exhibits B, and then the ones I'm about to discuss right now are attached as Exhibit D, which is that a month after his overdetention, to Judge Higginbotham's question, a month that he submits in another ARP, again, he doesn't know at this point that he's a sex offender. He just knows, A, he's being held past his release date, and B, that he's been asked to provide addresses. He submits an ARP. He says, I've submitted addresses. I'm being held past my release date. I think it's some issue with calculation of previous time, but I don't know. Please help. Then several weeks later, he filed another ARP that said, this is all in November 2017. He filed another ARP that said, I keep submitting these addresses. Here are the addresses again. I don't know what's going on. Even if he were a sex offender, even if there was an honest mistake, there's no explanation why he wouldn't have been released in a timely manner after he provided the addresses. Instead, again, after these complaints, not just providing addresses but providing them several times, nine months pass. Then an attorney contacts the Department of Corrections and says, my former client is sitting in prison, over-detained because of a sex offender notification. The closest thing he has to that is a plea that he filed and then withdrew decades ago. Can you please tell me what's going on? And the time from receiving that e-mail, it was acknowledged that same day, it was forwarded to the right person. The time from receiving that e-mail to his release was an initial 17 days, which actually, in Crittenden, the failure of certain defendants to act once they had been notified for exactly 17 days had held to be a violation of a clearly established law. So we have this initial mistake. Like perhaps an honest mistake, perhaps not. We're not into discovery. This was an appeal from Rule 12. In Crittenden, the defendants that did not receive qualified immunity, they knew that they were to be released, and they did nothing. And all they needed to do was pick up the phone and call. And they waited 17 days and picked up the phone and called in his immediate release. Right. And here they received this e-mail and 17 days pass before Mr. Parker is released, that exact same length of time. So seeing this bigger picture of issues, now, if it had just been this sole mistake, I still think, especially under the precedent in Crittenden, we could say that this is similar enough, especially on Rule 12. Connick, of course, was after trial. Jason was on summary judgment. That at least on Rule 12, that it's plausibly similar and within this universal sufficiently that Secretary LeBlanc is on notice. However, once we see all the errors, it starts to look a lot like the other over-detention cases. So the other over-detention cases involve mistaken data entry, a failure to correct errors, and a failure to release people once they are notified. And here they were notified of some issue, again, that could be resolved by anybody incredibly easily, not specialized information, even before the clock started to run. I'd be very happy to answer any of these courts' other questions. I guess none of us was exactly sure you were finished. Well, explore with us the basis of your assertions against LeBlanc. It's supervised reliability. You need to show that he was deliberately indifferent to what was going on. You're relying, I assume, largely, I shouldn't say that, on Judge Higginbotham's analysis in Crittenden. It does seem to me that how far that goes and when it applies is somewhat subject to question. I'm trying to recall to what extent is heck being discussed in the briefs here, regardless of what Crittenden did with it. It does seem to me heck is always going to be in play. What bothers me about each of these cases is drawing a line between when the issue really is on the sentence itself, which I think includes the calculation. It includes when is the person actually going to get out. You don't just go back to the date in Louisiana State Court when the person got a sentence. Part of that sentence is determining as service in prison continues what the actual end date is. Where is the line to be drawn of when heck applies and doesn't apply when you're determining the actual effective release date? Absolutely. So I would just note that for purposes of this case, the defendants never raised heck. In this case, my understanding is that they raised it. In the case you're going to hear momentarily, and heck isn't jurisdictional. It can be waived. It's not raised here. It does concern me on how Crittenden is applying. But if that is the case, if that's conceded, then we need not deal with it. Yeah, it is conceded here. And I think the reason, just to address maybe the broader implications of what you're talking about, and the fact pattern here, he was not labeled a sex offender incorrectly by the sentencing court here or by any sentencing court. This was an administrative error done by a Department of Corrections employee, and that was the basis for him being held. So Mr. Parker has absolutely no issue, and he has no legal basis to invalidate any aspect of his sentence. His only issue is actions that the Department of Corrections took that were entirely extralegal and that had nothing to do with the sentence. So for that reason, heck doesn't apply. I believe you all will get more into the details of heck in the subsequent case. And the note on deliberate indifference, it is true that typically you're going to need a pattern of similar events to demonstrate that a high-level official was aware that their failure to implement policies or any other kind of inaction would inevitably result in constitutional violations. What we have here is allegations of thousands of these incidents over the years. Again, coming back to a few major themes that defendants are trying to narrow to, well, it's all sentence miscalculation. But that's not what the allegations of the complaint say, and the allegations of the complaint cite things like legislative reports and the Six Sigma report that Secretary LeBlanc championed. They don't limit themselves to mistaken sentence calculations. It's they address mistaken data entry. They address a failure to correct errors. Of course, this is, again, in this particular case, this is a fairly innocuous mistake that was brought to defendant's attention a month before he should have been released. It was a mistake that was made and that should have been very easily fixed and could have been fixed by anybody and yet was not. That's part of the pattern alleged in this complaint and documented in the reports. And then we have a failure to release people when they were notified that they were eligible for release. So what it seems, and again, we're on Rule 12, we're just going on plausibility here, it seems that even just by providing the address, even taking the mistake as a given, he was eligible for release nine months before he was released. At the very least, he was eligible, they were aware that he was eligible for release when an attorney emailed them and clarified the basis for it 17 days before. So this is all, at least as the allegations state the case, are just all of a piece with a broader pattern of over-detention that's talked about. What was the role of Blanc personally and Atkin, I guess that's how you pronounce his name, in this case? Pardon me, I didn't quite hear. What was the role of, you have, excuse me, I'm losing my voice. The question I have is qualified immunity focuses upon an individual. Yes. And it's one thing to have a single individual with a responsibility who fails to exercise it. It's something else if you have an official who's in charge of the entire system and the system fails. But the question is, it goes back to the question of patterns and so forth, and the notice they had and what their singular role was in the failure to state. That's right. I think it goes back to the pattern. We don't hold a head of an entire department personally liable for failures, any singular failure out there of the system itself. It goes back to this question of pattern, if you will. That's exactly right. It's a high bar to hold somebody in Secretary LeBlanc's shoes constitutionally liable for this sort of violation. The allegations that we have here are that, you know, the most egregious of constitutional violations, holding somebody imprisoned with no constitutional basis, happened thousands of times that he was aware of it and that he did nothing to act on it. So, and that this fit with, and that there's no question he was on notice of all of this. He was given reports. He was given legislative audits. So. What about this case? In this case. So in this case, it's the allegation is that the inadequacy of implementing policies inevitably caused constitutional violations, including this one. Now, I will say we are in a bit of an unusual posture because unlike Crittenden and Jason and Connick, there's been no discovery here. Remember in Crittenden there were several other defendants that were granted qualified immunity. Right. And there's another defendant here, including the defendant who my friend on the other side said made the honest mistake, but the defendants didn't file an interlocutory appeal on her behalf. So that's why we're solely here on Secretary LeBlanc. It's not that he's the only defendant. So once we get into discovery, it's possible that Parker's over-detention was the result of some sort of idiosyncratic circumstances and not these very widespread failures that can be fairly attributed to Secretary LeBlanc. However, it's certainly plausible that that's exactly what's happened. And that's why he, as an individual, at this stage at least, is plausibly liable. Where are you in terms of discovery of it again? My understanding, I'm not the trial counsel, but my understanding is there's been no discovery because it's been on pause because of defendants' interlocutory appeal. But my friend on the other side can clarify that if I'm incorrect. Anything else? No. Thank you very much, Your Honors. Just a few points on rebuttal. Judge Higginbotham, you asked me how many days, 288, after his last ARP was submitted. After his last what? ARP was submitted. There was also some discussion about whether he knew that he had been misclassified as a sex offender. Let me ask you a question about the posture of the case. The qualified immunity is determined that it is available at the earliest point when it can be determined. And the question is whether or not you are in a motion to dismiss here, but no discovery whether the case should simply go forward to find out more about the case. The problem with that is that qualified immunity is immunity from suit, not just liability. So the idea that discovery would be available just to find out whether any of his pleading standards could possibly be satisfied is inappropriate. Well, isn't it possible that discovery could reveal, might reveal, that some of the over-detention incidents that are identified in the complaint were the result of mislabeling, misclassification? I would say that Mr. Parker relies very heavily on the other cases that have been litigated and the facts in those cases. And you would think, as we have been discussing, there are lots of problems. They have been thoroughly documented. And not one of those problems is— Can the State be sure that there are no other over-detention episodes attributable to mislabeling or misclassification? That's Mr. Parker's burden. He's trying to meet that burden with discovery. But he must meet it at his pleading standard—I mean, excuse me, in his pleadings, and he hasn't even alleged that there is one single other case like this. So you argue—the State's view boiled down. This is a misclassification case. It is not a miscalculation case. And that's the consequential difference. But whatever word comes after the prefix mis—misclassification, mislabeling, miscalculation—they're all mistake cases. They're all misstep cases. And is it really the State's view that this is just an idiosyncratic, as opposing counsel put it, a coincidence with a completely different cause from all the other cases? And why isn't it just illustrative of the common, similar root problem of— whether you call it incompetence or failure to train or failure to supervise, why don't all of these—this pervasive, widespread pattern sort of underscore the same root problem? Two—three answers. One, that's not the approach laid out by Connick. Two, the difficulty, the tightrope that Mr. Parker must walk here is avoiding responding at superior liability. And simply, that's why the law requires Secretary LeBlanc to be on notice of this particular problem, so that we're not just attributing general knowledge— A sex offender. —not the pervasive over-detention of people for a variety of different— So that he could do something about it. —mistaken reasons. Correct. So that he could do something about it and fix the policy. And the policy fix for this type of thing is very different from the policy fix for release date miscalculations. And that's also the approach that was followed in Hicks. It was also a misstep there or a misfollowing of a court order that caused the over-detention there, and the court very carefully distinguished it from these over-release date misclassifications. Secretary LeBlanc also has definitely not conceded his heck argument. It was raised below. It was not raised in this interlocutory appeal because this court's case law at the time was not clear that a heck issue could be raised in an interlocutory appeal. It remains live in the district court and will be raised if there are subsequent appeals. One final thing. It's been argued very strongly that this mistake was brought to defendant's attention. That just isn't the standard. There must be a pattern sufficient to put the secretary on constructive notice that things like this are happening so that he can fix it and avoid his duty and not act deliberately indifferent. Right? That notice is what triggers him to have to do something. I see my time is over. Thank you very much. Thanks to both sides on your presentations today.